**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 4:18-CR-970 JAR-NAB |
| ) | |
| TARAS WALLACE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Currently pending before the Court is Defendant Taras Wallace's Motion to Suppress Evidence. [Doc. 37].

### I. BACKGROUND

Taras Wallace is charged in a three count indictment. Count one charges him with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); count two charges him with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and count three charges him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Wallace seeks to suppress evidence found during a protective sweep of his house following his arrest. The United States filed a Response to Defendant's Motion to Suppress Evidence [Doc. 39]. On September 25, 2019, the undersigned held an evidentiary hearing. Walker appeared in person and was represented by Assistant Federal Public Defender Charles Banks; the Government was represented by Paul D'Agrosa and Amy Sestric. At the evidentiary hearing, the United States offered testimony of St. Louis County Police Detective Nicholas Payne ("Detective Payne") and St. Louis County Police Department Task

Force Officer Christopher Douglas ("TFO Douglas"). The Government also introduced one exhibit. The defendant did not offer any witnesses, but defense counsel cross examined both witnesses and introduced five exhibits. All exhibits are listed on the Clerk's Exhibit List (Doc. 51).

Following the hearing, a transcript was prepared and both parties filed post hearing briefing. Briefing was completed on November 25, 2019. As such, Wallace's pretrial motion is now fully briefed and ready for a ruling. Based on the evidence adduced at the evidentiary hearing and the written submissions of the parties, I make the following findings of fact and conclusions of law.

## II. FACTUAL FINDINGS

Nicholas Payne is a detective with the St. Louis County Police Department. At the time of the evidentiary hearing, he had been with the department for eleven years and on September 17, 2018, he was part of the St. Louis County Police Department anti-gang unit. Detective Payne's testimony at the evidentiary hearing was supported by the documentary evidence presented at the hearing and corroborated by the testimony of TFO Douglas. Based on my observations of Detective Payne at the evidentiary hearing, I found Detective Payne to be a credible and reliable witness.

On September 17, 2018, the anti-gang unit was conducting an undercover operation in an area of Jennings, Missouri known as the pit. Detective Payne stated that there is a gang in that area and that officers have observed open air drug sales. The undercover operation involved four arrest teams in undercover vehicles. An undercover police officer, Detective Vincent was sent into the area to attempt to buy drugs. Detective Vincent was provided buy money to use in the drug transaction. As Detective Vincent was traveling down Jennings Station Road, he observed

a man later identified as Larry Hill walking eastbound on Emma.  As the detective turned to go eastbound on Emma, Hill flagged him down.  Detective Vincent pulled over and Hill approached the vehicle.  Hill asked Detective Vincent what he was looking for.  Detective Vincent told Hill he was looking for $40.00 worth of heroin, Hill indicated that he did not have heroin, but could get crack cocaine. Vincent agreed to purchase the crack cocaine from Hill.

Hill then got into the undercover vehicle and directed Detective Vincent to an address at the corner of Sherry and Wilborn.  Surveillance vehicles could see Vincent's vehicle and the arrest team officers could hear Detective Vincent's description of what was happening over the KEL- a one-way radio system. When Detective Vincent and Hill arrive at 6350 Sherry, Hill got out of the vehicle and made contact with another man later identified as Wallace.  After a brief conversation with Hill, Wallace goes into the house at 6350 Sherry and Hill stays outside.  Surveillance then sees Wallace leave the house and approach Detective Vincent in the car.  Wallace confirms that Detective Vincent wanted $40.00 worth of drugs and then hands the narcotics to Detective Vincent.  Once the transaction is completed, Detective Vincent gives the code signal to the arrest teams and they move in to make the arrests.

Three arrest teams arrive at 6350 Sherry and take Wallace and Hill into custody.  Wallace and Hill's descriptions and locations had been relayed to the arrest teams by the surveillance officers.  After Wallace was arrested, he was searched and the buy money was recovered from him. Detective Payne arrested and searched Hill.  He then handed Hill off to two other detectives and assisted three other detectives who were approaching the house at 6350 Sherry.  Detective Payne testified that officers were doing a protective sweep of the house because in their experience in doing undercover buys, it's common for other parties to be involved, other than just the one main dealer.  When they approached the house, the front door was open and they were not sure

3

whether there was anyone else in the house. He also stated that the protective sweep is "proper procedure for the majority of the arrests that we make. If the transaction happens and an individual is seen coming and going from a house…then it's very common for other individuals to be involved that are still inside the residence. And so for officer safety reasons we clear that residence to make sure that there are no other individuals that cause a risk to the public or law enforcement."

When they first entered the house, there was a living room where they saw a gun on the coffee table. Officers then went into the kitchen where they saw narcotics, sandwich bags, a scale and a cell phone. In his experience, the items in the kitchen are commonly used to prepare narcotics for sale. Officers did not find any other individuals in the house during the protective sweep.

Christopher Douglas is employed by the St. Louis County Police Department as a Task Force Officer. He has been a police officer for approximately nine years. In September 2018, he was assigned to the anti-gang unit. TFO Douglas' testimony at the evidentiary hearing was supported by the documentary evidence presented at the hearing and corroborated by the testimony of Detective Payne. Based on my observations of TFO Douglas at the evidentiary hearing, I found TFO Douglas to be a credible and reliable witness.

TFO Douglas was the first officer to approach the house after Wallace and Hill were arrested. He noticed that the front door was open and that there was a gun on the coffee table in the living room, just a few feet from the front door. He stated that they entered the house for the purpose of conducting a protective sweep to ensure there were no other subjects inside the house. He added, "being a known drug house, we don't know who's inside, whether they're armed, or whether they want to come to the aid of the person we just arrested that conducted the transaction.

So, at that point we want to make sure that there's no chance for anybody to come out with a gun to aid the defendant."

TFO Douglas clarified on cross examination that he considered the house a "known drug house" because he had seen Wallace go in and out of the house to sell drugs to Detective Vincent. He did not have any prior knowledge of drug transactions taking place at that house.

After the sweep was completed, TFO Douglas and Detective Brinkman cleared the gun by removing the magazine and removing the round that was in the chamber, rendering the weapon safe.

### III.   LEGAL ANALYSIS

Wallace contends that the protective sweep of his residence following his arrest was an unlawful search and therefore any evidence seized during the sweep should be suppressed. The Fourth Amendment holds inviolate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted).

One such exception is the "protective sweep." *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Alatorre*, 863 F.3d at 813 (citing *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). "The government bears the

burden of proving that [the protective sweep] exception to the search warrant requirement applies." *United States v. Green*, 560 F.3d 853, 856 (8th Cir. 2009).

"The Fourth Amendment permits 'the protective sweep ... if the searching officer possesse[d] a *reasonable belief* based on *specific and articulable facts* which, taken together with the *rational inferences* from those facts, reasonably warrant[ed] the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Alatorre*, 863 F.3d at 813 (citing *Buie*, 494 U.S. at 327 (alterations in original) (emphasis added) (internal quotation marks omitted)). "*Buie* authorizes protective sweeps for unknown individuals in a house who may pose a threat to officers as they effectuate an arrest; *Buie* does not allow a protective sweep for weapons or contraband." *Alatorre*, 863 F.3d at 813 (citing *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005)).

Wallace seeks to suppress the evidence seized during the protective sweep of the house. He contends that the protective sweep was an unlawful search because police lacked articulable facts, which taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that there was a dangerous individual inside the house.

Wallace contrasts the facts relied on by police in *Alatorre* to conduct a protective sweep to the facts of his case. In *Alatorre*, the Eighth Circuit found a protective sweep was justified by several articulable facts. These facts and inferences include: (1) Alatorre's girlfriend lingered in the kitchen out of sight of the officers until she was specifically called to the door, indicating that it was easy for someone to hide just out of view of the officers inside the residence in a position from which an attack could be launched; (2) guns or other dangerous weapons were conceivably present in the residence given Alatorre's criminal history involving concealed weapons and the alleged violent baton attack prompting the arrest, giving anyone remaining inside the residence

6

access to weapons to use in an ambush of the officers; (3) the audible movements and behaviors (*e.g.*, coming to the door and retreating; quietly conversing) of people behind the door and blinds after the officers knocked, along with the delays in answering the door, created a reasonable uncertainty as to how many people were inside the residence and their intentions toward the officers, and (4) officers on the front porch of the residence dealing with Alatorre and his girlfriend were vulnerable to attack from someone inside the residence. *Alatorre*, 863 F.3d at 814–15. In contrast, Wallace argues that here, Wallace was arrested in the street some 100 feet from the house, there were no movements or voices to indicate that anyone else was in the house. In addition, officers had not seen anyone other than Wallace enter or leave the house, this, he claims there were no articulable facts to justify the protective sweep.

Detective Payne testified that the protective sweep was necessary because in his experience of conducting undercover buys, it's very common for other parties to be involved. When officers approached the house, the front door was open, and a firearm was seen through the open door. Officers were not sure whether anyone else was inside. The purpose of the protective sweep was to be sure, for officer safety reasons, that there were no other individuals in the house that could cause a risk to the public or law enforcement.

TFO Douglas also testified that the purpose of the protective sweep was to ensure there were no other suspects inside the house. Because Wallace had entered the house to conduct the narcotics transaction, officers did not know whether anyone else was inside, whether they may be armed or whether they would come to the aid of the person just arrested.

Based on the evidence presented at the hearing, I find that there were articulable facts to justify the protective sweep here: (1) Wallace was working with an accomplice to conduct drug sales; (2) Wallace was seen going into the residence to retrieve drugs, and officers could infer that

he had contact with another accomplice in the house; (3) a gun was visible through the front door of the residence; (4) officers had not been conducting surveillance on the residence for an extended period of time and did not know whether there were other individuals in the residence; and (5) if others were hiding in the house, they would pose a threat to the safety of officers and the public. Therefore, a reasonably prudent officer could believe there were dangerous individuals in the house. "A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers." *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006) (citing *United States v. Jones,* 193 F.3d 948, 950 (8th Cir.1999)).

## IV.     CONCLUSION AND RECOMMENDATION

For the foregoing reasons,

**IT IS HEREBY RECOMMENDED,** that Wallace's Motion to Suppress Evidence. [Doc. 37] be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of January, 2020.